Thomas M. **HARTNETT**, Plaintiff,

v.

Barry **STERN**, Murray G. Dickman, Herbert C. Thieme, John Kelly, William J. Westington, John Doe, Richard Rowe, and the Commonwealth of Pennsylvania, Defendants.

Civ. A. No. 85–536.

United States District Court,
W.D. Pennsylvania.

Sept. 28, 1987.

James H. Logan, Pittsburgh, Pa., for plaintiff.

Thomas E. Halloran, Sr. Deputy Atty. Gen., Pittsburgh, Pa., for defendants.

## OPINION

GERALD J. WEBER, District Judge.

Thomas Hartnett was the Western Regional Supervisor of the State Workmen's Insurance Fund, a division of the Pennsyl-

vania Department of Labor and Industry. On October 14, 1983, the Secretary of Labor and Industry paid a surprise inspection visit to the Pittsburgh Regional Office only to find that at 3:30 in the afternoon Hartnett was not in. When Hartnett returned shortly thereafter the Secretary apparently communicated to Hartnett his displeasure on several points regarding management of the office. Several days later, Hartnett was informed of the Secretary's decision to discharge him.

Plaintiff filed this suit claiming that his due process rights were violated by the precipitous manner in which he was discharged. After extensive discovery by both parties defendants moved for summary judgment arguing that as a matter of law plaintiff had no property interest in continued employment which would trigger due process guarantees.[1] The parties have submitted briefs with evidentiary materials, including largely irrelevant excerpts of depositions. After a review of the parties' submissions we conclude that plaintiff had no property interest in his job which would invoke a due process analysis.

Plaintiff must of course establish an underlying property or liberty interest to support a constitutional right to procedural due process. Here plaintiff relies solely on a claimed property interest in continued employment. Although plaintiff advances several possible sources for such a property interest, the only one with any arguable vitality is based on the state's personnel regulations.[2]

To determine the import of these personnel rules in a due process context, i.e. whether they confer a property interest in continued employment, we must look to state law. *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). In Pennsylvania, bureaucratic units of state government may not confer property rights in continued employment absent legislative action. E.g., *Wilt v. Commonwealth,* 62 Pa.Commw. 316, 436 A.2d 713 (1981); *Pa-*

*gano v. Pennsylvania State Horse Racing Commission,* 50 Pa.Commw. 499, 413 A.2d 44 (1980). In the absence of a legislatively authorized property right, each non-civil service public employee serves subject to dismissal at will. E.g., *Banks v. Redevelopment Authority of Philadelpia,* 416 F.Supp. 72 (E.D.Pa.1976), aff'd. 556 F.2d 564 (3d Cir.1977).

In the present case, plaintiff relies on the personnel rules promulgated jointly by the Governor and the Executive Board. Management Directive 505.7. Two essential questions are presented at this stage: 1) Did the legislature authorize the creation of a property right in continued employment?, and 2) Do these Rules in fact create such a right? After a review of the enabling statutes and the various regulations we answer both questions in the negative and enter summary judgment for defendants.

The only statutory authority plaintiff advances to support the personnel rules is at best ambiguous on the issue of tenured employment. Administrative Code of 1929, 71 Pa.S.A. §§ 73, 75, 81, 82 and 249. These provisions empower the Governor and/or the Executive Board to hire, fire, fix compensation, set qualifications for employment, create titles, and approve and regulate such personnel matters as leaves of absence. Although quite specific on a variety of topics the Legislature does not mention, let alone authorize, permanent employment, the creation of a tenure system or a just cause standard for dismissal.

This silence in the enabling statutes speaks volumes on the issue before us, particularly in light of the Civil Service Act, 71 Pa.S.A. § 741.1 et seq. There the legislature demonstrated clearly its intention to create a system to provide a measure of job security for a wide range of public servants. We do not hold that only such a statutory scheme can create a property interest in continued employment, but it illustrates by stark contrast the absence of any such legislative intent in the statu-

---

1. Defendants also raise qualified immunity on summary judgment but because of our resolution of other issues, we need not address it.

2. There is no evidence of a mutually explicity understanding of a right to continued employment, and the mere existence of a pension plan which plaintiff participated in creates no implied right to continue until vesting.

tory provisions which underlie the personnel rules in question.

The consistent theme of the Pennsylvania decisions is that any property interest in continued employment must derive from constitutional or statutory authority:

> [I]n order for the plaintiff to prevail it would have been necessary that the Governor had the power to issue a directive granting an entitlement to continued employment to an employee in a non union position not included within the civil service system. Absent legislative action such a proposition is dubious.

*Pagano v. Pennsylvania State Horse Racing Commission,* 50 Pa.Commw. 499, 413 A.2d 44, 45 (1980), quoted in *Wilt v. Commonwealth,* 62 Pa.Commw. 316, 436 A.2d 713 (1981). See also, *Mahoney v. Philadelphia Housing Authority,* 13 Pa.Commw. 243, 320 A.2d 459 (1974); *Perri v. Aytch,* 724 F.2d 362 (3rd Cir.1983) (exception to the general rule based on the independence of the judiciary); *Banks v. Redevelopment Authority of Philadelphia,* 416 F.Supp. 72 (E.D.Pa.1976), aff'd. 556 F.2d 564 (3d Cir. 1977). The enabling statute relied on here simply does not provide any authority to create an entitlement to a non-union non-civil service job. Its scope is not that broad.

We must note that we have no doubt that the bureaucracy has the power to create procedures for handling personnel matters in a uniform and orderly manner. This is evidently the purpose of these personnel rules. What is not authorized is the creation of a second tier of civil service employees enjoying tenured employment.

Even the case plaintiff relies on most heavily [3] illustrates the point. In *Reneski v. Commonwealth,* 84 Pa.Commw. 226, 479 A.2d 652 (1984), plaintiff was furloughed in apparent violation of certain Management Directives issued by the Governor and Executive Board. The court held that these Directives were enforceable and supported a cause of action in large measure because they were necessary to effectuate the requirements of the statute which authorized them. These regulations were not just permissible under the Civil Service Act, but were required to satisfy the Act's purposes and would therefore be enforced as the statute would. In the present case, the Management Directive, i.e. the personnel rules, has a considerably more tenuous relation to the enabling statute.

We conclude therefore that the Governor and the Executive Board are without the power to create a property interest in continued employment in these circumstances. In addition, our review of the personnel rules and Pennsylvania law indicates that even if the power existed, these rules are not sufficient to create a property right.

The personnel rules are prefaced by a comment which characterize them as being for the "guidance" of state agencies. Rather than being mandatory in nature, many of the pertinent rules are phrased in terms of "may" or "should". E.g., §§ 36.-1(a) and (b); 36.2; 36.11(c); 36.14. Furthermore, the rules are phrased in relatively broad, imprecise terms. E.g., §§ 36.1; 36.12.

We find some guidance in Pennsylvania decisions concerning employee handbooks in private industry. It is only where such a handbook clearly indicates the employer's intention to convert employees to tenured employees can the at-will presumption be overcome. E.g., *Martin v. Capital Cities Media,* 354 Pa.Super. 199, 511 A.2d 830 (1986). Otherwise a handbook is "an aspirational statement by the employer." 511 A.2d at 838. The state's personnel rules are clearly no more than that.

For the reasons stated above, summary judgment will be entered in favor of defendants.

---

**3.** Plaintiff has also placed much emphasis on *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), claiming it to be "on all fours" with the case at bar. Review of *Loudermill* reveals it to be wholly inapposite. There, the plaintiff's entitlement to continued employment was contained in explicit language in the statute itself, the Ohio Civil Service Act. We deal here with a non-civil service employee, an ambiguous statutory base and bureaucratic regulations.